IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, CHARLESTON, SC
2007 OCT -9  A 11: 06

| | |
|---|---|
| Antonio Brown, personal representative of the estate of George Lewis, Jr., ) ) ) ) | C. A. No. 2:06-2143-TLW-RSC |
| Plaintiff, ) ) | |
| -versus- ) ) | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, ) ) ) ) | |
| Defendant. ) | |

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, George Lewis, Jr., brought this action on July 27, 2006, pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

Oral arguments were held before the undersigned on July 18, 2007, at which time the plaintiff's attorney notified the court that the plaintiff had died subsequent to filing this action. Thereafter on September 27, 2007, a Motion to Substitute Party for the plaintiff was filed and the Commissioner did not object to the motion. On October 2, 2007, the motion was granted and Antonio Brown, son of George Lewis, Jr., was substituted as the plaintiff.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on March 1, 2004, alleging that he became disabled on February 13, 2003, due to arthritis in his right shoulder and numbness in his limbs. The application was denied initially and on reconsideration by the Social Security Administration. The plaintiff filed a request for a hearing on December 21, 2004. The administrative law judge before whom the plaintiff appeared with counsel, and Feryal Jubran, a vocational expert, considered the case de novo, and on December 21, 2005, found that the plaintiff was not disabled under a disability as defined in the Social Security Act, as amended. (Tr. 18-27). The administrative law judge's opinion became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on June 30, 2006.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant's asthma/chronic obstructive pulmonary disease (COPD), and degenerative disc disease of the cervical spine are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> 3. These medically determinable impairments do not meet or medically equal one of the listed

impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant retains the residual functional capacity to lift up to 50 pounds occasionally and 25 pounds frequently. He can sit, stand, and/or walk for 6 out of 8 hours. He can frequently balance, stoop, kneel, crouch, crawl and can occasionally climb ladders, scaffolds, and ropes, and reach overhead. He needs to avoid concentrated exposure to pollutants such as fumes, odors, dusts and gases.

6. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

7. The claimant is an "individually closely approaching retirement age" (20 CFR § 404.1563).

8. The claimant has "a limited education" (20 CFR § 404.1564).

9. The claimant has no skills transferable to other work from his past relevant work (20 CFR § 404.1568).

10. The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 404.1567).

11. Although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.04 as a framework for decision-making, there are a significant number of jobs in the national economy that the claimant could perform. Examples of such jobs include work as a machine packager, SVP 2, DOT #920.685-078(6,210 in SC and 926,000 in US); production helper, SVP 2, DOT # 691.687-010 (11,350 in SC and 1 million in US); and as assembler, SVP 2, DOT # 806.684-010 (20,296 in SC and 820,000 in US).

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time

>through the date of his decision (20 CFR § 404.1520(g)).

Tr. 26-27.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

>the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v.

4

Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and proper legal standards have been applied.

### QUESTIONS PRESENTED

At oral argument the plaintiff's counsel asserted that the plaintiff was entitled to an award of benefits because the administrative law judge committed reversible error by failing to consider and adopting the medical source opinion of Dr. Kolehma in arriving at the plaintiff's residual functional capacity as required by SSR 98-6p and 20 CFR 404.1527.

### MEDICAL SOURCE OPINIONS AND RESIDUAL FUNCTIONAL CAPACITY

Administrative law judges are required to weigh all medical source opinion evidence and explain in their decision why they rely on a particular opinion when opinions are conflicting. See 20 CFR § 404.1527(f); Taylor v. Weinberger, 528 F.2d 1153, 1156

5

(4th Cir. 1975); <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1223 (10th Cir. 2004). Furthermore, while an administrative law judge may not reject medical evidence for no reason or for the wrong reason, <u>see</u>, <u>King v. Califano</u>, 615 F.2d 1018, 1020 (4th Cir. 1980), an administrative law judge may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Under SSR 96-8p, residual functional capacity (RFC) is defined as an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. This ruling further provides that the RFC assessment must be based on all of the relevant evidence in the case record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. Moreover, SSR 96-8p specifically states that "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

## DISCUSSION

A review of the record and relevant case law reveals that substantial evidence does not support the administrative law judge's determination of the plaintiff's residual functional capacity (RFC) and that correct legal principles were not applied.

6

Plaintiff underwent a consultative examination by Dr. Kerri Kolehma on April 22, 2004, at the request of the South Carolina Disability Determination Service. According to Dr. Kolehma, Plaintiff exhibited restricted range of motion on cervical extension and decreased sensation to pinprick in the right C-7 dermatome, and she assessed him with multi-level cervical spondylosis and C-7 radiculopathy on the right. (Tr. 124) With regard to Plaintiff's functional limitations, Dr. Kolehma stated that "He would be unable to lift anything with his right arm greater than 10 to 15 pounds on an occasional basis, and he should refrain from extending his neck and doing any type of overhead work in which his neck is extended for long periods of time." (Tr. 124).

As a review of the record reflects, Dr. Kolehma was the only examining physician who specifically addressed Plaintiff's lifting capabilities, thus her opinion on this issue is uncontroverted.

At his hearing, Plaintiff testified that he had experienced ongoing neck pain since he stopped working as a longshoreman in February, 2003. He indicated that his pain radiates into his shoulder area, and that he had difficulty raising his arms over his head, moving his neck up and down, and moving his neck from side to side. (Tr. 199). Plaintiff further testified that he occasionally experienced problems gripping and holding objects, and he indicated he believed that the 10 to 15 pound lifting restriction recommended by Dr. Kolehma as to his dominant right

7

upper extremity accurately described his lifting capabilities. (Tr. 199-200).

With regard to his daily activities, the plaintiff testified that he usually spends most of his time at home watching television, although he occasionally goes out on the weekends. He also indicated that he can do some housework, but only for short intervals. (Tr. 202-203). In response to questioning by the administrative law judge, Plaintiff testified that he does perform a few chores around his house, such as cooking, mopping, taking out the trash and cleaning his kitchen. (Tr. 204). He indicated that he drives four or five times a week, usually for short trips to the store, and he also testified that he goes to church three or four times a month. (Tr. 205-206).

After concluding that Plaintiff had the RFC to perform a significant range of medium work[1], the administrative law judge next found at step 4 that the plaintiff was unable to perform any of his past relevant work. Then, at step 5, the administrative law judge applied the Medical-Vocational Guidelines, the "grids", to find that Plaintiff retained the capacity for work that exists in significant numbers in the national economy and that he therefore was not under a disability as defined in the Social Security Act. (Tr. 26-27).

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

It is also noted that the administrative law judge wrote, inconsistent with his findings, that Plaintiff had the RFC to perform light work. (Tr. 25).

8

Here, the sole examining physician to provide a medical source opinion regarding Plaintiff's functional limitations was Dr. Kerri Kolehma. However, although the administrative law judge acknowledged that Dr. Kolehma limited Plaintiff to lifting no more than 10 to 15 pounds with his dominant right upper extremity, and in fact incorporated this restriction into his first hypothetical question to the vocational expert, he nonetheless rejected this medical source statement in finding that the plaintiff was capable of performing medium work. Further, contrary to Dr. Kolehma's recommendation that Plaintiff refrain from overhead work, the administrative law judge also found that he was capable of occasionally reaching overhead.

On the other hand, in finding that Plaintiff had an RFC for medium work, the administrative law judge did not cite any supporting medical opinion from any of the physicians who examined Plaintiff; none of these doctors opined that Plaintiff was capable of lifting 25 pounds frequently and occasionally lifting up to 50 pounds.

As the basis for rejecting the only medical opinion from an examining physician regarding Plaintiff's lifting capabilities, the administrative law judge stated that he "[D]id not use the 15 pound lifting limitation with the right upper extremity assessed by Dr. Kolehma in her consultative evaluation because of the wide range of daily activities reported by the claimant, and the minimal findings shown in his physical examinations." (Tr. 24).

However, the record does not contain substantial evidence to support the administrative law judge's reasoning. A MRI of

9

Plaintiff's cervical spine provided objective medical evidence of multi-level disc abnormalities, including a C3-4 right-sided disc herniation. (Tr. 103-104). Furthermore, the reports of the physicians who examined Plaintiff establish that he had numerous positive clinical findings, including limited range of motion and extension of the cervical spine, decreased sensation to pinprick in the right C-7 dermatome, decreased reflexes and strength in the right arm, and paresthesias in the right hand. (Tr. 97, 120, 124). As the medical evidence further reflects, the findings from Plaintiff's MRI and physical examinations formed the basis for the diagnosis of C-7 radiculopathy by Dr. Pacult and Dr. Kolehma, and Dr. Kolender also specifically opined that Plaintiff's symptoms were consistent with the disc herniation and chronic degenerative disc disease detected on his MRI. (Tr. 97, 117, 124). It appears that, contrary to the administrative law judge's statement that there were only minimal findings on Plaintiff's physical examinations, there is abundant objective medical evidence to support Dr. Kolehma's opinion regarding the plaintiff's lifting limitations.

Additionally, while there is no medical opinion evidence from an examining source to support the administrative law judge's RFC findings, the administrative law judge did state in his decision that "My determination that the claimant is disabled [sic] is further supported by the determinations of the State agency physicians". (Tr. 25). However, when, as here, the opinions of non-examining, non-treating physicians are

10

contradicted by essentially all other evidence in the record, such opinions do not provide substantial evidence to support the administrative law judge's RFC determination. Millner v. Schweiker, 725 F. 2d 243 (4th Cir. 1994); Mathis by Mathis v. Shalala, 890 F. Supp. 461 (E.D.N.C. 1995). Moreover, although the administrative law judge relied upon the State agency physicians to support his decision, his RFC findings were nonetheless inconsistent with the RFC assessment of these physicians with regard to Plaintiff's ability to climb ladders, ropes or scaffolds. (Tr. 160).

Likewise, the administrative law judge's rejection of Dr. Kolehma's assessment based upon "the wide range of daily activities" the plaintiff described is not supported by substantial evidence. While the administrative law judge correctly stated that Plaintiff testified to performing such activities as eating, watching television, going to the store, loading the dishwasher, taking out the trash, attending church, and taking a trip to Florida, none of these activities equate to the ability to perform medium work on a full-time, regular and continuing basis. The administrative law judge then failed to cite any of Plaintiff's activities which would entail lifting weights exceeding 15 pounds, much less activities necessitating the lifting of 50 pounds as required by work at the medium exertional level. Under these circumstances, the administrative law judge's failure to adopt Dr. Kolehma's opinion regarding Plaintiff's lifting limitations based upon his daily activities is not supported by substantial evidence since the record does

not reveal any inconsistency between the doctor's limitation and the plaintiff's daily activities. See, Hines v. Barnhart, 453 F. 3d 559 (4th Cir. 2006).

Additionally, the administrative law judge's decision is inherently inconsistent with regard to the weight given to Dr. Kolehma's evaluation of the plaintiff's functional capabilities. While the administrative law judge rejected Dr. Kolehma's assessment of Plaintiff's lifting limitations, he nonetheless specifically cited this very limitation as one of the factors he considered in determining that "[T]he testimony of the claimant is not fully credible concerning the severity of his symptoms and the extent of his limitations." (Tr. 23).

In addition to the administrative law judge's failure to give proper weight to the only medical source opinion of record regarding Plaintiff's functional capacity, he also misstated the law in this case when he found that "The claimant has failed to meet his burden of proving incapacity to perform any and all work throughout the period under consideration." (Tr. 23). Since the administrative law judge found in the sequential evaluation process that Plaintiff was incapable of performing his past relevant work, the burden of proof in this case had shifted to the Commissioner to establish that the are jobs in the national economy that Plaintiff can perform, considering his age, education and work experience. While the administrative law judge did state the correct law in other portions of his opinion, his inconsistent statements make it unclear whether he applied the proper burden of proof.

12

Lastly, it is noted that Plaintiff was already 61 years old at the time of his hearing, which is defined under 20 CFR § 404.1563 as an individual closely approaching retirement age. Since the administrative law judge found that Plaintiff had no transferable skills, the grids themselves take administrative notice of the fact that he was incapable of performing both sedentary and light work. Therefore, contrary to the administrative law judge's view of the law, Plaintiff did not have the "burden of proving incapacity to perform any and all work."

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that pursuant to the power of this court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), and the case is remanded to the Commissioner to award benefits. See, Melkonyan v. Sullivan, 111 S.Ct. 2157 (1991). The Clerk of Court should enter a separate judgment pursuant to Fed. R. Civ. P. 58.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina,
October 9, 2007

13